FILED

2010 May-28  PM 02:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **JEFFERSON COUNTY, ALABAMA,** | ) | |
| **ACTING BY AND THROUGH THE** | ) | |
| **JEFFERSON COUNTY COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:10-cv-00485-KOB** |
| | ) | |
| **UNISYS CORPORATION, a Delaware** | ) | |
| **Corporation,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## ANSWER AND COUNTERCLAIM

COMES NOW Unisys Corporation ("Unisys"), by and through its counsel, and responds to the Complaint filed by Jefferson County, Alabama and asserts affirmative defenses and a counterclaim as follows:

### Preliminary Statement

For more than five years, Unisys worked to replace Jefferson County's outdated Tax Collector information management system with a new computer software system that has been successfully implemented in more than 30 other counties and municipalities around the Southeast. Despite Unisys's best efforts to meet the ever-changing demands of the County, the County eventually decided to unilaterally terminate the project without any prior notice to Unisys just weeks before the software system was ready to go-live. It was the County's failures that

led to the collapse of this project.   Unisys therefore responds to the County's Complaint by denying that the County is entitled to any of the relief it seeks, and by asserting a Counterclaim for the more than $1 million the County owes Unisys.

Unisys responds to the numbered paragraphs of the County's Complaint as follows:

1.      Unisys denies the allegations in paragraph 1.

**The Parties**

2.      Unisys is without knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 2 and, therefore, denies the allegation.

3.      Unisys admits that it is a corporation organized under the laws of the State of Delaware, with its headquarters and principal place of business at Unisys Way, Blue Bell, Pennsylvania.   Unisys denies the remaining allegations in paragraph 3.

4.      Unisys denies the allegations regarding jurisdiction and venue as those constitute conclusions of law to which no responsive pleading is required.  Unisys admits that Jefferson County is located in Jefferson County and that Unisys conducts business in Jefferson County and the State of Alabama.  Unisys denies the remaining allegations in paragraph 4.

## Background

5.      Unisys is without knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 5 and, therefore, denies the allegation.

6.      Unisys is without knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 6 and, therefore, denies the allegation.

7.      Unisys admits that in May 2001, Jefferson County released Request for Proposal No. 238-01 (the "RFP"), which sought proposals from qualified bidders for an "Integrated Tax System."   Unisys is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 7 and, therefore, denies the remaining allegations in paragraph 7.

8.      Unisys denies the allegations in paragraph 8 of Plaintiff's complaint.

9.      Unisys admits that it submitted a proposal in response to the RFP issued by Jefferson County in 2001.  To the extent that the remaining allegations refer to statements in Unisys response to the RFP, the document should be reviewed for its content.  If Jefferson County has mischaracterized its content, Unisys denies those mischaracterizations.  Unisys denies the remaining allegations in paragraph 9.

10.      Unisys admits that it entered into a Master Agreement for Products and Services (the "Master Agreement") effective December 26, 2001 with Jefferson County and that Jefferson County and Unisys agreed to a Statement of Work in April 2002 for the Tax Collector program.   To the extent that the remaining

allegations refer to the content of the Master Agreement and its supporting documentation, including but not limited to the Statement of Work for the Tax Collector project, the documents should be reviewed for their content.  If Jefferson County has mischaracterized their content, Unisys denies those mischaracterizations.  Unisys denies the remaining allegations in paragraph 10.

11.    Unisys admits that the April 2002 Statement of Work included a project schedule and list of deliverables.   To the extent that the remaining allegations refer to the content of the April 2002 Statement of Work, the document should be reviewed for its content.  If Jefferson County has mischaracterized its content, Unisys denies those mischaracterizations.   Unisys denies the remaining allegations in paragraph 11.

12.    Unisys admits that the "Tax Collector Project Initiation" kickoff meeting occurred on April 17, 2002.  Unisys denies the remaining allegations in paragraph 12.

13.    Unisys denies the allegations in paragraph 13.

14.    Unisys denies the allegations in paragraph 14.

15.    Unisys denies the allegations in paragraph 15.

16.    Unisys denies the allegations in paragraph 16.

17.    Unisys denies the allegations in paragraph 17.

18.    Unisys denies the allegations in paragraph 18.

19.     Unisys admits that Jefferson County paid it over $1 million by the end of 2004 for work that Unisys and Manatron had performed pursuant to the contract for the Tax Collector project.  Unisys denies the remaining allegations in paragraph 19.

20.     Unisys denies the allegations in paragraph 20.

21.     Unisys denies the allegations in paragraph 21.

22.      Unisys denies the allegations in paragraph 22.

23.     Unisys denies the allegations in paragraph 23.

24.     Unisys is without knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 24 regarding Jefferson County's state of mind and, therefore, denies the allegation.   Unisys denies the remaining allegations in paragraph 24.


## Count I

## Breach of Contract

25.     Unisys incorporates its responses to the previous paragraphs as if fully set forth herein.

26.     Unisys admits that Unisys and Jefferson County entered into a binding and enforceable Master Agreement dated December 26, 2001 related to certain components of the Integrated Tax System project and that this Master Agreement

included supporting documentation, including but not limited to, Statements of Work and change orders. To the extent that the remaining allegations refer to the Master Agreement and its supporting documentation, the documents should be reviewed for their content. If Jefferson County has mischaracterized their content, Unisys denies those mischaracterizations. Unisys denies the remaining allegations in paragraph 26.

27.    Unisys denies the allegations in paragraph 27.

28.    Unisys denies the allegations in paragraph 28.

29.    Unisys denies the allegations in paragraph 29.    Further answering, Unisys denies that Jefferson County is entitled to the relief requested in paragraph 29 or to any other relief whatsoever.

## Count II

## Unjust Enrichment

30.    Unisys incorporates its responses to the previous paragraphs as if fully set forth herein.

31.    Unisys denies the allegations in paragraph 31.

32.    Unisys denies the allegations in paragraph 32.    Further answering, Unisys denies that Jefferson County is entitled to the relief requested in paragraph 32 or to any other relief whatsoever.

## GENERAL DENIAL

Unisys denies all allegations and/or legal conclusions set forth in Plaintiff's Complaint that have not previously been specifically admitted or denied.

## AFFIRMATIVE AND OTHER DEFENSES

If necessary and/or in the alternative, Unisys raises the following affirmative and other defenses, but reserves the right to amend its Answer to raise any additional affirmative and other defenses that it may have against Plaintiff's claims:

## FIRST AFFIRMATIVE DEFENSE

Jefferson County's complaint fails to state claims upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Venue in this district/division may be improper or inconvenient.

## THIRD AFFIRMATIVE DEFENSE

Jefferson County's complaint is barred, in whole or in part, by the applicable statutes of limitations.

## FOURTH AFFIRMATIVE DEFENSE

Jefferson County's complaint is barred, in whole or in part, by the actions or inactions of Jefferson County.

## FIFTH AFFIRMATIVE DEFENSE

No act or omission of Unisys caused Jefferson County to suffer any damages.

## SIXTH AFFIRMATIVE DEFENSE

Jefferson County's purported claims and/or damages are the result of the actions of third-parties, over

whom Unisys had no control or duty to control.

## SEVENTH AFFIRMATIVE DEFENSE

To the extent that Jefferson County suffered any damages, the same being specifically denied, those damages were caused by the acts or omissions of Jefferson County.

## EIGHTH AFFIRMATIVE DEFENSE

To the extent that Jefferson County suffered any damages, the same being specifically denied, those damages were caused by persons and/or entities over whom Unisys had no control or duty to control.

## NINTH AFFIRMATIVE DEFENSE

To the extent that Jefferson County suffered any damages, which Unisys denies, Jefferson County failed to mitigate its damages.

## TENTH AFFIRMATIVE DEFENSE

Jefferson County's complaint is barred, in whole or in part, by Jefferson County's failure to join an indispensable party.

## ELEVENTH AFFIRMATIVE DEFENSE

Jefferson County's complaint is barred, in whole or in part, by the doctrines of waiver and/or estoppel.

## TWELVTH AFFIRMATIVE DEFENSE

Jefferson County's complaint is barred, in whole or in part, by the doctrine of unclean hands.

## THIRTEENTH AFFIRMATIVE DEFENSE

Jefferson County's claims are barred by its breach of the contract at issue.

## COUNTERCLAIM

1.      In 2001, Jefferson County issued a Request for Proposals (RFP) for an Integrated Tax System to replace the existing systems in the Department of Revenue, Board of Equalization, and offices of the Tax Collector and Tax Assessor.

2.      Unisys submitted a bid in response to the RFP and proposed a total solution for all components of the Integrated Tax System.

3.      After receipt of the bids, the County changed its mind and, instead of awarding one contract for all Integrated Tax System components to the successful bidder, chose to negotiate separate contracts for each component.  In essence, rather than relying on one contractor to oversee the entire project and ensure the

components were integrated properly, the County chose to act as its own general contractor.

4.     The County chose Unisys's solutions for the Department of Revenue and Tax Collector components.  The County awarded NovaLIS Technologies the solution for the Board of Equalization using its Computer Aided Mass Appraisal (CAMA) software.  No separate solution was awarded for the Tax Assessor's office as the Tax Assessor utilizes both the software from the Board of Equalization and the Tax Collector components to generate its assessments.  Unisys was awarded a contract to provide the interface between the Tax Collector and Board of Equalization components for the Tax Assessor's office to use.

5.     Unisys and the County entered into a Master Services Agreement on December 26, 2001 and a specific Statement of Work (SOW) for the Department of Revenue component of the Integrated Tax System known as the Revenue Management System.

6.     In the Spring of 2002, Unisys and the County entered into a SOW for the Tax Collector component of the Integrated Tax System.  The price included a fixed component of $1,866,171 plus reimbursement of travel expenses.

7.     Under the Tax Collector SOW, the County agreed to "provide required technical and domain expertise in a timely manner based upon a work plan

developed by the Unisys project manager in conjunction with the Jefferson County project manager."

8.    Unisys and the County also agreed in the SOW to "conduct weekly meetings to review and update overall project status, report on activities and recommendations from the Steering committee, and report the status of compliance to Jefferson County and Unisys upper management."

9.    The County committed to provide the following for the project: "Jefferson County shall provide all business, operational, and technical data for the County's environment, as necessary to meet the objectives of the Tax Collector project."   "Jefferson County shall make available project sponsors, business specialists, and relevant technical specialists who can address Jefferson County-specific issues related to Unisys efforts to perform services specified in this SOW."

10.   The SOW further included the following assumptions:

- Funding for the Tax Collector project is approved, or will be approved by project initiation.

- Jefferson County will provide resources as scheduled.

- Unisys will have access to all appropriate facilities.

- Jefferson County will approve items submitted to the County for approval within 5 working days.

11.   For the Tax Collector component, Unisys entered into a Software License and Development Subcontract with Manatron, Inc., for Unisys to provide Manatron Visual Property (MVP) Tax Manager Software to Jefferson County.

12.     Also in the Spring of 2002, Unisys and the County entered into a SOW for Unisys to provide the interface between Manatron's MVP software and NovaLIS's CAMA software for the Tax Assessor component.

13.     Unisys and Manatron extended their contractual relationship to have Manatron provide the interface between the Manatron and NovaLIS softwares.

14.     In the Summer and Fall of 2002, Unisys, Manatron and the County met to develop the requirements documentation for the Tax Collector component.  The requirements documentation is critical in a software implementation project as it defines the scope of the client's requirements and the approved requirements documentation is used to create the software solution.  As such, the client must be able to clearly articulate its requirements during this exercise.

15.     The Tax Collector requirements documentation was not completed and approved, however, until 2003 due to the fact that the County withdrew its resources from the project from October 2002 until the end of January 2003 to process taxes.  This "dark period" as it became known caused a delay in the approval of the requirements documentation in the first year and led to further delays in subsequent years despite the efforts of Unisys and Manatron to accommodate the County's lack of resources during the dark periods.

16.     In November 2002, J.T. Smallwood was elected the new Jefferson County Tax Collector.

17.     Each year during the project, the County entered its "dark period" from approximately September to January when it processed tax collections and refused to commit resources to the Integrated Tax System project.

18.     By April 2003, the County was not able to provide the level of resources required to meet the original go-live date of August 2003.  The County still had not approved all of the requirements documentation and began pushing to delay the go-live date by over a year to October 2004.

19.     Without a commitment from the County, Unisys and Manatron could not meet the original date.  Therefore, Unisys and Manatron presented options to the County to delay the go-live date to 2004.  The County chose to move the go-live date to July 2004.

20.     Unisys, Manatron and the County agreed that Manatron would iteratively deliver portions of the software functionality in order to allow the county to more efficiently test the software.  Each "unit" of functionality was tested by Manatron prior to release to the County for the County to test.  Throughout 2003, Manatron produced these iterations in the form of software releases.  Each software release contained certain functionality to meet the County's requirements.  By staggering the releases, Unisys and Manatron hoped to the County could timely review and test the software.

21.     During testing of the software releases, the County identified certain "issues" with the Manatron software releases that needed addressed.  Unisys and Manatron worked through the dark period in late 2003 to address these issues.

22.     By the beginning of 2004, it was clear that the Tax Collector personnel assigned to test the software releases were not qualified and identified many "issues" that, when investigated, were user errors or County data errors and not issues with the software functionality or engineering.  Unisys and Manatron expended extra personnel effort to assist the unqualified Tax Collector personnel to resolve the County's issues and keep the project moving forward.

23.     In addition, the Tax Collector personnel tasked with responsibility for this project were not committed to change.  The Tax Collector personnel repeatedly requested out of scope changes to try to make the Manatron software function more like the County's antiquated mainframe based Tax Collector system.

24.     At the beginning of 2004, after the County emerged from its dark period, the County made two unilateral decisions which negatively impacted the agreed to go-live date of July 1, 2004.  First, the County decided it no longer wanted the previously accepted correspondence function, and demanded that a new correspondence function be integrated into the Manatron software.  Second, the County decided that it wanted to add a major interface to the project to allow its Tax Collector component to interface with another system called FileNet.  With these

proposed changes, the go-live date of July 2004 was delayed. Unisys, Manatron and the County spent considerable time negotiating a change orders for the correspondence function and FileNet. In the end, the County approved the change order for the correspondence function in Spring 2004 but changed its mind and did not approve the FileNet change order.

25.     At the same time, Unisys and the Department of Revenue (a completely different Department within the County staffed and run by personnel different from the Tax Collector's office), worked together to successfully implement the Unisys Revenue Management System. The Revenue Management System went live in June 2004 and is still in use by the Department of Revenue today.

26.     By the end of 2004, all the functionality required for the Tax Collector component was developed and delivered the County and the County had successfully performed Systems Integration Testing on the MVP software. User Acceptance Testing, where Tax Collector personnel test the software in an operational environment, was scheduled to begin in late January 2005 after the County finished processing its taxes and emerged from its dark period. Unisys and Manatron proposed a go-live date of May 1, 2005.

27.     During the "dark period," Manatron finished the work it could do without County involvement and had its personnel working on other matters until the County could recommit its resources to the Tax Collector project.

28.     Unisys believed that the County was committed to beginning UAT in January 2005 and was shocked when the County emerged from its "dark period" and refused to commit to a project plan that included beginning UAT in January 2005.

29.     Instead, the County demanded that Manatron address certain "issues" in the software releases prior to beginning UAT.   Unisys and Manatron believed these issues were better addressed during UAT because many related to user error or data error and addressing these "issues" during UAT would avoid delaying go-live.

30.     Around this same time, NovaLIS missed its go-live date for the Board of Equalization component and Unisys understood that the County planned to send NovaLIS a default letter.   Without the NovaLIS component, the County could not implement a new Integrated Tax System as planned.   As the Board of Equalization component stalled, the County became more obstinate in its demands of Unisys and Manatron to produce "error-free" software, something not required by the contract or requirements documentation.

31.     The County, Unisys and Manatron continued discussions to move the Tax Collector project forward and in June 2005, met in Birmingham to discuss finishing the project.

32.     During this contentious meeting, Mr. Smallwood suggested that the County abandon the Tax Collector project and his counsel, Mr. Strickland, told him that only the County commission could make that decision.

33.     At the end of these discussions, Mr. Smallwood indicated his commitment to the Tax Collector project and the County agreed to commit resources to continue the project with an anticipated go-live in 2006.  Unisys and Manatron relied on that commitment to continue working towards project completion.

34.     In November 2005, NovaLIS filed for bankruptcy protection and ceased work on the Board of Equalization component.  Unisys understood that the County IT group planned to complete the Board of Equalization component itself. Unisys and Manatron continued to work on the Tax Assessor Interface project assuming that the County IT group would complete the Board of Equalization component.

35.     In January 2006, the County, Unisys and Manatron agreed to a go-live date of August 2006 for the Tax Collector component.  This go-live date was contingent, however, on the County providing necessary information Manatron

would need to move forward, including test cases and additional data from the Tax Collector's existing system for the prior year of tax collection. Once this data was incorporated, Manatron would release the updated software and the County would have to perform Systems Integration Testing again. The County failed to provide all necessary data in a useable format, resulting in a delay in Systems Integration Testing, which in turn led to a delay in UAT.

36. Finally, in July 2006, the County began UAT and Manatron began training the County personnel. During this resource intensive time, the County opened the Bessemer satellite office and pulled away several resources from the Tax Collector project.

37. Suddenly, despite the progress made in the UAT testing and training and the fact that the system was within weeks of being ready to go-live, the County refused to continue to participate in any testing or training after August 7, 2006. Instead, the County declared that it was entering its dark period early to prepare for tax season.

38. During discussions between Unisys's counsel and Mr. Strickland, counsel for the County, on August 8, 2006, Mr. Strickland indicated that the County was committed to go-live but did not feel it could continue into August. Instead, he proposed that the project resume after the County's dark period ended in January

2007.  After numerous discussions and assurances from the County that they were committed to re-starting the project in early 2007, Unisys and Manatron agreed.

39.   During the dark period, the County IT personnel were supposed to provide Manatron with corrected data records to put into the software system in order to timely complete testing and training in early 2007.  In November 2006, in response to a query from Unisys on the status of the County's efforts to provide the necessary information, Deborah Townsend, the County's project manager for the Tax Collector project wrote that the County Tax Collector personnel were consumed with a project to correct over 9000 tax bills because of an Alabama Attorney General opinion that was just issued.

40.   This opinion issued October 26, 2006 by the Attorney General's office overturned prior opinions from the same office allowing homestead exemptions to be prorated and, according to Ms. Townsend, required the Tax Collector's office to correct thousands of tax bills during the dark period when the Tax Collector's office was already busy with processing tax payments.

41.   In early January 2007, Unisys contacted the County to resume testing and training as agreed.  Again, Mr. Strickland, the County's counsel, assured Unisys that the County intended to go forward with the project, but Mr. Strickland indicated that testing could not resume  until mid to late February 2007 because the

County staff was still making tax bill corrections due to the Attorney General's ruling.

42.     Instead of resuming the project in February 2007 as agreed, however, the County wrongfully terminated the Tax Collector project for its own convenience on March 20, 2007, without any prior notice to Unisys.

43.     The County also terminated the Tax Assessor Interface project for its own convenience without any prior notice to Unisys.

44.     The County's wrongful terminations breached the contract between Unisys and the County related to both the Tax Collector and Tax Assessor Interface projects causing significant monetary loss to Unisys and its subcontractor Manatron.

45.     Specifically, at the time that the County terminated the Tax Collector project for its own convenience in breach of the contract, the County owed Unisys (and Manatron) $44,873 for actual travel expenses incurred and $782,894 remained to be paid by the County on the contract to Unisys for a total amount owed of $827,767.

46.     Also, at the time that the County terminated the Tax Assessor Interface project for its own convenience in breach of the contract, the County owed Unisys $188,132.

## Count One
### (Breach of Contract)

47.     Unisys hereby incorporates paragraphs 1–46 of its Counterclaim as if fully set forth in this paragraph.

48.     Unisys and Jefferson County entered into a binding and enforceable agreement respecting the Tax Collector and Tax Assessor Interface components of the Integrated Tax System project, which were embodied in the Master Agreement (including the schedules, addenda, and amendments thereto) and the Statements of Work applicable to those components.

49.     Unisys performed or attempted to perform its obligations in connection with the Tax Collector and Tax Assessor Interface components.

50.     Jefferson County failed to perform and/or refused to perform its obligations in connection with those components, including but not limited to failure to make remaining payments to Unisys.  Jefferson County is therefore in default under and has breached the Master Agreement and the Statements of Work applicable to the Tax Collector and Tax Assessor Interface components.

51.     As a result of Jefferson County's default and breach, Unisys has suffered damages in an amount not less than $1,015,899, on which interest and late charges continue to accrue.

WHEREFORE, Unisys demands judgment against Jefferson County for these damages, plus late charges, interest, costs and attorneys' fees, and any additional relief to which Unisys is entitled.

## Count Two
## (Quantum Meruit)

52.    Unisys hereby incorporates paragraphs 1–51 of its Counterclaim as if fully set forth in this paragraph.

53.    Unisys performed work on the Tax Collector and Tax Assessor Interface components of the Integrated Tax System project with the full expectation of receiving reasonable and equitable compensation.

54.    Jefferson County knowingly accepted the services Unisys rendered in connection with those components.  Indeed, Jefferson County actively encouraged Unisys's continuing work on these components up to the point that the County unilaterally terminated the project without prior notice.

WHEREFORE, Unisys demands judgment against Jefferson County for the reasonable value of the services it rendered for which it has not received equitable compensation, plus interest, costs and attorneys' fees, and any additional relief to which Unisys is entitled.

## DEMAND FOR JURY TRIAL

Unisys demands a trial by jury.

/s/ Alan D. Mathis
James C. Barton, Jr. (BAR014)
Bar Number:  ASB-0237-B51J
Email:  jbartonjr@johnstonbarton.com

Alan D. Mathis (MAT052)
Bar Number:  ASB-8922-A59M
Email:  adm@johnstonbarton.com

*Attorneys for Defendant,*
*Unisys Corporation*

JOHNSTON BARTON PROCTOR & ROSE LLP
Colonial Brookwood Center
569 Brookwood Village, Suite 901
Birmingham, Alabama  35209
Telephone:  (205) 458-9400
Facsimile:  (205) 458-9500

OF COUNSEL

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 28, 2010, I electronically filed the foregoing via the Court's CM/ECF system, which will electronically send notice to the following counsel of record:

> Michael S. Denniston, Esq.
> Jeffrey D. Dyess, Esq.
> Bradley Arant Boult Cummings LLP
> One Federal Place
> 1819 Fifth Avenue North
> Birmingham, Alabama  35203-2104

> /s/ Alan D. Mathis
> Of Counsel

W0746080